EDITH HALLSTROM, LOUISE THOMAS, EXECUTRICES OF THE ESTATE OF FRED J. SWAINE, DECEASED, AND EDITH HALLSTROM AND LOUISE THOMAS (PLAINTIFF), RESPONDENTS, v. NELLIE SWAINE AND VERNON SWAINE (DEFENDANTS), APPELLANTS.—115 S. W. (2d) 159.

St. Louis Court of Appeals. Opinion filed April 5, 1938.

Motion For Rehearing Denied, April 20, 1938.

Writ of Certiorari Denied June 17, 1938.

*Myrtle B. Wood* and *Ivon Lodge* for respondents.

*James J. McMullen* and *R. L. Ailworth* for appellants.

HOSTETTER, P. J.—This is a suit to construe a clause in a will. Fred J. Swaine, a resident of St. Louis County, Missouri, died testate on the 12th day of July, 1934, and his will was duly admitted to probate in the probate court of said county, on the 18th day of July, 1934. The assets of his estate consisted of personal property of the approximate value of $82,000 and real estate of the approximate value of $10,000, and his debts, allowed demands, taxes and the expense of administration, aggregated approximately $10,000. He left surviving him, his widow Nellie J. Swaine, and a twenty year old son, Vernon Swaine, born of his marriage with her, and three children born of a former marriage, and a grandson, child of a deceased son of the former marriage.

The will of Fred J. Swaine was executed on May 2, 1932, and, caption, signatures and attestation clause omitted, reads as follows:

''First: I direct that all my just debts and funeral expenses shall be paid as soon after my decease as conveniently may be done.

''Second: I remember my grandson, William Swaine, son of Charles Swaine. I gave to his father, Charles Swaine, his share of my estate. In my affection for my said grandson I give him the sum of Three Hundred Dollars ($300) absolutely.

''Third: I remember my son Fred J. Swaine, Jr. I have given him his share of my estate. At this time my said son owes me One Thousand Dollars ($1000). I forgive him said debt and direct that he shall be released from liability thereon. I give to my said son in addition thereto the sum of Three Hundred Dollars ($300).

''Fourth: To my wife, Nellie Swaine, I give all property which she would be entitled to have and to receive from my estate according to the laws of the State of Missouri if I had died intestate.

''Fifth: All the rest, residue and remainder of my estate of every kind and character, wheresoever situate, I give, devise and bequeath in equal shares to my son Vernon Swaine, my daughter Louise Thomas and my daughter Edith Hallstrom, the survivors or survivor of them, absolutely.

''I constitute, nominate and appoint my daughters Edith Hallstrom and Louise Thomas, or either of them, executrices of this my last will and testament and direct that they or either of them shall not be required to give bond as such.''

The widow, Nellie Swaine, filed her election under section 328, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 328, p. 215), to take a child's part absolutely in the real estate in lieu of dower, and, under section 323, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 323, p. 208) she was entitled to a child's share in the personalty. Upon her petition an order was made by the probate court allowing her the

sum of $5500 for support and maintenance, in accordance with section 107, page 164, Laws of Missouri, 1933. There was also allowed to her the sum of $400 absolute property as provided in section 108, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 108, p. 70).

The widow then claimed that she should be paid the said sums of $5500 and $400 a second time, and the executrices and residuary legatees brought this suit to determine what interest the widow had in said estate. The trial court decreed as follows:

"That under the terms of said clause of said will said Nellie Swaine is entitled to receive the allowance of $5500 for her maintenance for one year and one-sixth of the remainder of said estate less the sum of $400 absolute property under Section 108, Revised Statutes Missouri, 1929, and that she is not entitled to have either of said allowances paid twice; that the allowance of $400 absolute property aforesaid heretofore received by her must be deducted from her one-sixth of the remainder of said estate; that said Nellie Swaine having heretofore received said allowance of $5500 for the year's allowance and said allowance of $400, is entitled upon final distribution to receive only one-sixth of the remainder of said estate less $400."

From this decree, the widow, after an ineffective motion for a new trial, duly perfected her appeal to this court.

Defendants' counsel, in their brief, stress the doctrine that every one is presumed to know the law and that this rule applies to the testator in the instant case. That may be a violent presumption, whether applied to lawyer or layman, but, insofar as this doctrine applies to testators, they must be held to know that their wills must not be in violation of settled rules of law. But for the purpose of the argument, let us apply it in its full force in the instant case, which would mean that the testator knew the meaning of Sections 106 and 107, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 106, p. 67, sec. 107, p. 69), which were in force at the time he executed his will on May 2, 1932, and what Section 107, page 164, Laws of Missouri, 1933, meant, which section had superseded said Sections 106 and 107, Revised Statutes Missouri, 1929, and was in effect at the time of the death of the testator.

Section 107, page 164, Laws of Missouri, 1933, provides certain specific property to become the absolute property of the widow. Now, it is impossible to match these specific articles under the law and under the will. Because, under the law she clearly takes these specific articles, and, taking them, there could be nothing to match them coming to her under the will. To illustrate: She takes "the family Bible, and other books, not to exceed two hundred dollars." She also takes "all the wearing apparel of the family, all implements and articles of domestic industry, all clothing of the family." She also takes "all household, kitchen and table furniture, including beds, bedsteads, and bedding, not to exceed the value of five hundred

dollars." The remainder of said Section 107 relates to her year's provision, the amount of which the court must fix in money. The impossibility of the widow taking these specific articles under the law and the same things under the will is apparent because when she takes *all* of these specific articles under the law, there, of course, could not be any of them left on which the will could operate, and the serious question arises: Could this absurd result have been in accord with the intent and wishes of the testator? We think not.

Under the theory advanced on behalf of the widow, she is entitled to receive from the estate of the husband, as catalogued in her brief, the following:

"By law:

"(a)  The absolute allowance made by the probate court in the sum of $400.

"(b)  The amount allowed by the probate court for one year's maintenance as her absolute right—$5500.

"By or under the will:

"(a)  The sum of $400.

"(b)  The sum of $5500.

"(c)  One-sixth of the balance remaining in the hands of the executrices after the deduction of the total of the four items above amounting to $11,800."

She objects to the language of the trial court in saying that "she is not entitled to have either of said allowances (meaning the $5500 and the $400) paid twice," and urges that they would not be received by her as allowances twice, but that "she would receive them as an allowance but once, and that the amount of the allowances so made, would again come to her, not as an allowance, but as a gift under the will."

Her claim is bottomed on the use by the testator of the words "I give" in the fourth clause of the will.

We cannot ascribe the same meaning to the words "I give," or, to the clause as a whole, which is contended for by the widow. We think it was the testator's way of relegating the widow to take out of the estate all which the law would give her in the event he had died intestate. "Only this and nothing more."

It would be a work of supererogation to cite the multitude of adjudicated cases to support the proposition that in construing wills we must ascertain the intent of the testator and place ourselves as near as humanly possible in the place of the testator in order to ascertain such intent, and when the intent of the testator is found, it is our duty to give it effect, unless it contravenes some principle of public policy, or violates some settled rule of law. We will content ourselves by citing the following authorities only in support of our views. [Mitchell v. Board of Curators Morrisville College, 305 Mo. 466, 266 S. W. 481; 69

C. J., 52, and Missouri cases collated on page 54, third column of foot notes.]

Similar clauses of wills have been interpreted in other jurisdictions as we have interpreted the controverted clause in the instant case.

69 Corpus Juris, 283, has the following text:

"It is generally held that where the will gives to the widow 'her lawful part,' 'what the law allows her,' or words of like import, she is entitled thereunder to such part of the testator's estate as she would have received if he had died intestate."

In McCormick v. Hall, 337 Ill. 232, 168 N. E. 900, also found with annotations at 66 A. L. R. 1062, the will read: "I will to my wife . . . that portion of my real estate and personal estate allowed to her under the laws of the State of Illinois, the same as would be allowed to her provided I departed this life intestate." The court held as follows:

"The appellant can take nothing under the statute of descent because its provisions apply only to intestate estates. . . . She takes under the will and the statute is material only because the will gives to her the portion of the estate to which the statute would entitle her if the testator had died intestate."

In Barr v. Weaver, 132 Ala. 212, the will read: "I give to my beloved wife such part or portion of my estate as she may be entitled to under the laws of Alabama, and in addition thereto I will that my said wife have the use and right to convey free of rent, etc., the house and lot occupied as residence, with furniture, until my youngest child arrives at the age of 21 years."

In construing this clause the court said:

"Under the second item of the will, as above set out, Mrs. Weaver takes the same quantum of property the statutes of dower and descent of the state would give in case of intestacy; not in the same form, perhaps, as if she had dissented from the will, but the intestate laws must be looked to for measure of her estate. . . . It is too plain to admit of any other interpretation or construction than that it was the testator's intention to give his wife just such portion as she would be entitled to under the laws of this state in the absence of any will, no more and no less. . . . We must look to the intestate statutes for the measure of the estate which Mrs. Weaver takes under the will."

In Foster v. Clifford, 87 Ohio State 294, the testator made this bequest: "I give and bequeath to my beloved wife, May Foster, all that part and interest in my estate, real, personal and mixed, which is secured to her, as my widow, by the laws of distribution of estates, of the State of Ohio, in the cases where wives survive husbands who die intestate. It was held by the court as follows:

"The part the widow was to receive is the part *secured* to her by the laws of distribution of the State of Ohio."

We quote from the opinion in Stineman's Appeal, 34 Pa. State Report 394, as follows:

" 'The testator gives to his widow so much of his estate as she is justly entitled to under the laws of this commonwealth, and no more.' This of course includes the $300 allowed to widows in all cases. It is urged, however, that she ought to have claimed this in accordance with the forms of the Acts 14th of April, 1851. But we do not think so. To claim under these acts, she must follow their forms; but claiming under the will, she must await its execution. It required all the personal estate to be sold, and, claiming under the will, the widow must let this be done. We do not therefore look to the intestate law for the form of her claim but for the measure of it."

It is, therefore, necessary to look to the statutes of Missouri to determine the proportion of the estate to which the widow is entitled. Under Section 107, Laws of Missouri, 1933, page 164, she is entitled to $5500 for maintenance for one year and to the specific articles enumerated therein. Section 108, Revised Statutes Missouri, 1929, provides for the widow to receive $400 absolute property, subject to the provisions of Section 109, Revised Statutes Missouri, 1929. Under Section 323, Revised Statutes Missouri, 1929, she takes a one-sixth, a child's share, in the personal estate. Under Section 328, Revised Statutes Missouri, 1929, by virtue of her election thereunder, she takes a one-sixth, a child's share, in the real estate.

It follows, therefore, that the judgment of the trial court should be affirmed, and, it is so ordered. *Becker* and *McCullen, JJ.,* concur.